Defendant-appellant, Ronald Branham, proceeding pro se, appeals a decision of the Butler County Court of Common Pleas in which the court denied his petition for postconviction relief without holding an evidentiary hearing. We affirm.
At a trial conducted March 15 — 21, 1994, a jury found appellant guilty of aggravated murder for the killing of Michael Grasa on the night of December 1, 1993. The evidence at trial revealed that the appellant shot two arrows into the victim's head and neck from a crossbow while the victim was sleeping in his bedroom. The details of the murder and appellant's trial were set forth in State v. Branham (1995), 104 Ohio App.3d 355, the decision in which this court affirmed appellant's conviction.
On September 17, 1996, appellant filed a petition for postconviction relief asserting five claims. The prosecutor filed an answer and a motion to dismiss the petition. On October 29, 1996 the trial court dismissed the petition without an evidentiary hearing. On appeal, appellant argues five assignments of error.
First we will set forth the applicable law dealing with postconviction relief. R.C. 2953.21 provides in pertinent part:
 (A)(1) Any person convicted of a criminal offense or adjudged a delinquent child and who claims that there was such a denial or infringement of his rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief. The petitioner may file a supporting affidavit and other documentary evidence in support of the claim for relief.
* * *
 (E) Unless the petition and the files and records of the case show the petitioner is not entitled to relief, the court shall proceed to a prompt hearing on the issues even if a direct appeal of the case is pending.
A criminal defendant is not automatically entitled to an evidentiary hearing on his postconviction claims. State v. Jackson (1980), 64 Ohio St.2d 107. The petitioner must show that there are substantive grounds for relief that would warrant a hearing based on the petition, the supporting affidavits, and the files and records of in the case. Id. A petition for postconviction relief may be dismissed without an evidentiary hearing when the claims raised are barred by the doctrine of res judicata. State v. Perry (1967), 10 Ohio St.2d 175.
 Under the doctrine of res judicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceedings except on appeal from that judgment, any defense or claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment of conviction, or on an appeal from that judgment.
Id., paragraph nine of the syllabus.
There is an exception to the doctrine of res judicata where the petitioner presents competent, relevant and material evidence dehors the record that was not available to the petitioner in time to support the direct appeal. State v. Lawson (1995),103 Ohio App.3d 307, 315. This evidence must be genuinely relevant, and it must materially advance a petitioner's claim that there has been a denial or infringement of his constitutional rights. State v. Lawson, following State v. Coleman (Mar. 17, 1993), Hamilton App. No. C-900811, unreported.
Appellant's first assignment of error relates to his first claim in his petition for postconviction relief wherein he argued that trial counsel rendered ineffective assistance of counsel by failing to subpoena an alleged alibi witness. Appellant supports this claim with an affidavit by William L. Brooks (a.k.a. Billay Brooks). In his affidavit, Brooks states:
 I, Billay Brooks do hereby solemny [sic] swear that the defense attorney for Ron Branham made only one attempt to contact me regrading [sic] Mr. Branham visiting Freedom of the Press where I was working. The attorney contacted me sometime after January 1, 1994. He was suppose [sic] to bring back photographs of Mr. Branham for me to identify, but he failed to return. To this day I have never had any further contact with Mr. Branham's defense attorney.
During his trial, appellant disavowed an earlier taped confession to killing Michael Grasa and testified the he was at the Forest Fair Mall at the time of the murder. Appellant claimed that he left the Grasa residence at 5:45 p.m., went home for a short period of time and then was at the mall between 8:40 p.m. to 10:40 p.m. Appellant claimed that he visited a tee shirt shop to discuss having a shirt custom designed, went to play video games and then spent time in two bars before leaving for home at 10:40 p.m. Appellant made no mention of visiting a store called Freedom of the Press during any of his numerous statements to police or during his testimony at trial. Appellant argues that his counsel was ineffective for failing to investigate Brooks as a potential alibi witness.
When arguing ineffective assistance of counsel, appellant "bears the initial burden in a postconviction proceeding to submit evidentiary documents containing sufficient operative facts to demonstrate the lack of competent counsel and also that the defense was prejudiced by counsel's ineffectiveness." State v. Jackson, 64 Ohio St.2d 107, 111.
Judicial scrutiny of counsel's performance must be highly deferential. Strickland v. Washington (1986), 466 U.S. 668,104 S.Ct. 2052. Every effort must be made to eliminate the distorting effects of hindsight and courts must indulge in a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. Id. Appellant must overcome the presumption that, under the circumstances, counsel's challenged action might be considered sound trial strategy. Id.
 [S]trategic choices made after thorough investigation of law and facts relevant to plausible opinions are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In any ineffectiveness case, a particular decision not to investigate must be directly addressed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments. The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information.
Id.
A review of the affidavit submitted by Brooks shows that Brooks does not claim that appellant was at Freedom of the Press on the night of murder, merely that while he was questioned once, a photograph of the appellant was not shown to him. Furthermore, at no time in the record did appellant ever place himself in the store where Brooks worked. Accordingly, it does not appear that a second interview, or a subpoena to testify, would have been helpful to substantiate appellant's alibi. Appellant has failed to establish sufficient operative facts to demonstrate the lack of effective assistance of trial counsel. Furthermore, we note that this claim is barred by the doctrine of res judicata as it could or should have been brought on direct appeal. State v. Perry, 10 Ohio St.2d 175. Appellant's first assignment of error is overruled.
Appellant's second assignment of error relates to his third claim in his petition for postconviction relief wherein he argued that Mr. Schwarberg, the investigator employed by court-appointed counsel, was not a licensed private investigator. Appellant argues that Schwarberg, who was employed to investigate appellant's alibi, did such a poor job that he was not called to testify. Appellant does not support this claim with any evidence outside the record and instead cites to the record arguing "the transcripts reflect that there was confusion between the Council and the Aid to Council Mr. Schwarburg concerning what he reported that the witnesses said, and what was actually said."
Appellant offers only broad assertions that Schwarberg "messed up." Appellant has offered no evidence and has failed to satisfy his burden to submit the necessary evidentiary documents containing sufficient operative facts demonstrating substantive grounds for relief. Furthermore, this claim could or should have been raised at the time of trial or in any direct appeal therefrom, and is not appropriate in a postconviction proceeding. State v. Perry, 10 Ohio St.2d 175. Appellant's second assignment of error is not well-taken and is overruled.
Appellant's third assignment of error relates to his second claim in his petition for postconviction relief wherein he argued that a portion of the trial testimony of Sergeant Anthony Dwyer was missing from the record. Appellant claims that he had a taperecorded conversation with Sergeant Dwyer which was different from an earlier statement. We have reviewed the transcript and find that Sergeant Dwyer's testimony is included in the record and that the tape recorded conversation was transcribed and the tape and the transcript were stipulated as a joint exhibit. Accordingly, we find no error prejudicial to appellant. Furthermore, this alleged error could or should have been brought on direct appeal and is therefore barred by res judicata. State v. Perry, 10 Ohio St.2d 175. Appellant's third assignment of error is not well-taken and is overruled.
Appellant's fourth assignment of error relates to his fourth claim in his petition for postconviction relief wherein he argued that it was error for the court to dismiss his petition concerning an alleged withholding of exculpatory evidence pursuant to Brady v. Maryland (1963), 373 U.S. 83,83 S.Ct. 1194. A due process claim under Brady cannot be maintained in the absence of a showing of prejudice, i.e., that the government's action deprived the accused of evidence that was favorable and material. United States v. Valenzuela-Bernal (1982),458 U.S. 858, 872-873, 102 S.Ct. 3440, 3449.
Appellant's petition for postconviction relief alluded vaguely to "missing money" and "information about evidence that would have challenged time of death." With respect to "missing money," appellant argues that testimony at trial established that Michael Grasa had $2,000 the day of his murder and that the money was never accounted for. However, the principles of Brady only apply in situations where information known to the prosecution, but unknown to the defense, is discovered after trial. State v. Brown (1996), 112 Ohio App.3d 583, 595-596. Accordingly, the principles of Brady do not apply because the testimony regarding the missing money was presented during trial.
Even assuming arguendo that Brady would apply, "in determining whether the prosecution improperly suppressed evidence favorable to an accused, such evidence shall be deemed material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceedings would have been different." State v. Brown, 112 Ohio App.3d 583, 595. In a confession made to police, appellant admitted that the murder was committed for nonmonetary reasons. Appellant has presented no evidence that the prosecution withheld evidence regarding missing money, nor has appellant demonstrated that he was in any way prejudiced by this alleged withholding.
Appellant's fifth claim for relief in his petition for postconviction relief also vaguely alludes to "information about evidence that would have challenged time of death." Appellant argues that because the bed on which Michael Grasa was lying was a heated water bed, that the coroner failed to take this information into consideration when determining the time of death. We find this argument to be barred by the doctrine of res judicata as it could or should have been brought at trial or on direct appeal. State v. Perry, 10 Ohio St.2d 175. Appellant's fourth assignment of error is not well-taken and is overruled.
Appellant's fifth assignment of error relates to his fifth claim in his petition for postconviction relief wherein appellant argued that he was prejudiced by the failure of the investigating officers to retrieve evidence. In his statement to police on December 1, appellant admitted to police that he had wrapped the arrows in a blue blanket, but was not sure how he disposed of them. However, during his trial testimony on March 17-18, appellant testified for the first time that he had thrown arrow shafts, gloves and bloody clothes wrapped in a blue blanket "into a garbage dumpster" on the premises of a self-storage business. Appellant admitted at trial that he had lied about the location of the items and suggested that the authorities should bulldoze the dump to find the items.
In support of this claim, appellant attached to his petition for postconviction relief affidavits from the manager of the storage facility and from the manager of the landfill who both stated that they had never been contacted regarding a possible search. Appellant argues that the officers investigating the murder failed to retrieve evidence from a landfill which appellant had thrown into a dumpster and misled detectives about for one hundred five days.
We find this claim to be clearly barred by the doctrine of res judicata as it could or should have been raised on direct appeal. State v. Perry, 10 Ohio St.2d 175. No new evidence has been presented by appellant. Appellant was aware at the time of trial that no search was made of the landfill. Accordingly, appellant's claim is barred and his fifth assignment of error is overruled.
Appellant's sixth assignment of error relates to a portion of appellant's fourth claim in his petition for postconviction relief alleging that detectives tried to coerce a witness, Dee Dee Ashdown, into giving testimony identifying a truck. In support of this claim, appellant attached to his petition an unsigned but notarized affidavit from Ashdown. Ashdown testified at trial that on the morning of December 2, 1993, she saw an older model black pick-up truck pull out of the Grasa residence on Yankee road "in a big hurry." Ashdown testified that she did not report the incident to the police until she heard about the murder on Yankee Road. In her affidavit, Ashdown claimed that a detective showed her a picture of a new shiny truck with a chrome tool box in the bed and said "this was the truck," to which Ashdown replied that "no it was not."
Other than this statement, there is no evidence that Ashdown was coerced into identifying appellant's vehicle. Furthermore, when shown photographs of appellant's truck and his father's truck, Ashdown testified that neither vehicle was the one she had seen leaving the Grasa residence. Accordingly, even assuming arguendo that there was attempt to coerce Ashdown, there was no prejudice as Ashdown failed to identify either appellant's truck or his father's truck as being at the Grasa house on the morning of the murder. Appellant's sixth assignment of error is overruled. Judgment affirmed.
YOUNG, P.J., and KOEHLER, J., concur.